Dolgencorp. Is it Keister? Is that the pronunciation of your client? Yes, Chyna. May I please accord? Good morning, your honors. I am Renitra Gustavus with the law firm of Chyber Gives and Gustavus and it is my honor to be here today and to represent Sandy Keister on behalf of her mother, the late Karen Orr. This appeal concerns the lower court's grant of summary judgment and Ms. Orr's premises liability claim against Dollar General. My client, Karen Orr, was an invitee at the Ackerman Mississippi Dollar General. Dollar General, that store was the only store in its 22 district, the 22 store district, to set up a self-service display of stacked canned drinks in the middle of an aisle. Dollar General's policies and procedures dictate that the stack bases upon which these drinks sit have to be above waist-high at all times. The policies dictate that anytime the stack bases are below waist-high or the drinks have been removed that they're below waist-high, that Dollar General is to remove the stack bases specifically because they are a trip hazard. Unfortunately, on this particular day, Dollar General failed to abide by its policies and procedures, did not remove the stack base when it reached below waist-high, and in fact the stack base was empty when Sandy Keister walked by and tripped and fell. The five and a half inch black stack base that was left on the center of an aisle by itself constituted a dangerous condition. Counsel, do we know how long it had been, at what point, I understand the way it's stacked, people purchase product and the stack gets lower. Yes, Your Honor. To a point where it's a hazard. Do we know how long or a timeline of what, maybe through some video evidence, of when the stack reached a certain lower height? Yes, Your Honor. That is part of the issue why we're here today, is that there was once upon a time video of the Dollar General store, CCTV footage, but that was not preserved by Dollar General. Your question kind of goes to the crux of this case, in my opinion. Dollar General noted that whenever those stack bases are below waist-high, it is that moment that it becomes a dangerous condition. We don't know how long it took for the stack base to dwindle from waist-high to the stack base being all the way empty. That's what I'm asking. Maybe another way is a violation of the policy of not letting the stack deplete too much isn't, per se, negligence. No, Your Honor. It's not like a res ipsa case. Right. There has to be some demonstration that it became a hazard and that the proprietor or manager of the store was aware of that hazard and failed to act promptly. Yes, Your Honor. When I worked for Justice Kitchens at the Mississippi Supreme Court, he used to have a saying, and I'm not even sure he remembers where this comes from, but the courts do not require us to leave our common sense at home. We know that it took a significant amount of time for that stack base to deplete from waist-high all the way to empty. The pictures of the stack bases are located in the record on page 627 in our initial brief on page 3 in our initial brief at page 27 and at Dollar General's briefing on page 12. In those pictures, you can see, and there's a person standing next to the exact stack base at issue, that it takes at least 18 drinks for a stack base to be waist-high. We know, the court knows, that it took at least the amount of time that it would have taken 18 customers to remove drinks from the dangerous condition of the waist-high stack base until it reached empty. That is the circumstantial evidence in which the judge was supposed to render in our favor or was supposed to grant the plaintiff the inference of this would be something that a jury could rely on and say, that constitutes constructive notice. In addition to your question, Judge Engelhardt, the CCTV footage of the day, the Dollar General, on the day of this accident was not preserved. Let me ask you about that because I know it's discussed in your brief. Was there any discovery taken with regard to preservation policy or the circumstances of how this particular item of evidence was lost? Yes, Your Honor. As you know, and it is noted in the record several times, the plaintiff actually had to file several motions to compel discovery to not only get this video, but we also, after the 30B6 testimony of Dollar General's corporate representative, found out that Dollar General keeps a written record of safety checks conducted throughout the day. Dollar General also kept electronic checks of safety checks that were conducted throughout the day. All three pieces of that evidence, the CCTV footage, the written safety checks, and the electronic safety checks, Dollar General failed to preserve all of that evidence. What is your burden to take advantage of a spoliation issue? What is your burden to show with regard to the defendant's actions? Yes, Your Honor. Federal Rule of Civil Procedure 37E is not the spoliation standard, but it kind of tracks it. There it talks about electronic discovery and the plaintiff's burden and the defendant's burden whenever electronic discovery is not preserved, which is what we are mainly dealing with here today. It provides that if the ESI should have been preserved, which no one disputes that it was, number one, we have to show that it prejudiced us, which we did in our motion for spoliation, and number two, we have to show that either Dollar General acted with the intent to deprive us of this information, and then the court can say, you get an unfavorable inference. Here, while there is no evidence that Dollar General intentionally destroyed each of these three separate discrete pieces of evidence, the court does not have to leave its common sense at home. Dollar General, either through systematic failures, negligence, or not following its own policies and procedures, failed to keep any evidence that plaintiff could have used to show that defendants were on constructive notice. Were there two cameras at issue here, one showing the entrance of the store and one showing the location of the accident? Is that correct? It's our understanding that there was a camera that showed the entrance of the store. Not only would that camera have showed us how many customers that had actually entered the store, which could have given us some sort of sense of how many people were in the store that could have taken those 18 drinks, how long would it have been before we could have seen the people who walked out of the store that had drinks in their hand? That CCTV footage would have given us the factual, tangible evidence that we need to support the circumstantial evidence of constructive notice. And the camera inside the store, was that a working camera or a dummy camera or a camera that just wasn't working? It's my understanding, and like I said, we've seen no footage. The only evidence that we have regarding the CCTV cameras is of the 36 representatives who testified that she watched the cameras. And in her testimony, she testified that she saw on the video the claimant walking in the store and the claimant being transported out of the store via EMS. Right, that's the door showing, the camera showing people coming in and out of the store. But the camera inside where the accident occurred. We don't have any of that knowledge. But was that an operating camera or a dummy camera? I'm not sure, Your Honor. You don't know? No, Your Honor. And how long was it from the time of the accident until the company was asked to produce this information? I'm not sure of the exact timeline of that either, but the company was on notice that Ms. Keister was seriously injured immediately. The manager on duty came and performed a written incident report. In that incident report, she specifically stated the stack base was empty. Ms. Keister was transported from Dollar General to the hospital via ambulance. So there was no question that this was a serious injury. Somebody was going to come asking about this, and Dollar General still failed to preserve that information. Their policies and procedures require that they're supposed to keep that written daily planner for three years. It was within those three years that we filed suit. The Dollar General 30B-6 representative testified that despite Dollar General's actual policies and procedures that require you keep it for three years, that it's customary that she keeps it for one year. Within that one year, they were still not able to produce it. What do you mean within that one year they were not able to produce it? I thought the record shows that they weren't asked for it until approximately three years later. Within that one year, they would have received our notice letter that we are representing, we were representing Karen Orr, and they still did not keep those records. Thank you. Yes, Your Honor. We talked about the tangible evidence that was destroyed, which leaves the plaintiff only with circumstantial evidence. Contrary to what the district court wrote in its order, circumstantial evidence, according to Warner Armstrong v. Home Depot, which is a case out of the Southern District of Mississippi, clearly dictates that Mississippi law provides that circumstantial evidence can create a genuine issue of material fact. Mississippi appellate courts routinely hold that courts are to use reasonable inferences in the light most favorable to the non-movement to determine constructive notice. The district court judge cited a case out of the 1960s to say that constructive notice must be proven absolutely. That has not been the case in the years since that opinion. In Patricola v. Imperial Palace of Mississippi, the Court of Appeals found that although the plaintiff did not have hard evidence of how long the puddle existed, the surrounding facts allowed the court to draw reasonable inference that the puddle accumulated gradually. And here, the reverse logic is true. The surrounding facts evidence that the drinks on the stack base did not disappear automatically. It had to have existed for long enough for customers to come through, shop the drinks, take them with them, and the stack base to dwindle all the way from waist high until it was completely empty. What evidence in the record says that this is, in fact, a dangerous condition? Yes, Your Honor. Number one, Dollar General itself admitted that the stack bases are a tripping hazard. The reason that the policies and they testified in their 30B6 deposition that the reason why the policies and procedures require them to remove those waist high stack bases is because they are specifically a tripping hazard. Chief Judge, you authored an opinion in 2016. I remember one of the names is Ray because that's my name, where a plaintiff had walked by a clothing rack several times. Everyone admitted she saw the clothing rack, but then when she walked by it again, she tripped on the bottom of it. And that case was primarily focused on whether it was an open or obvious condition. But in it, the court dictated that the logic behind it was that merchandise in a store is designed to draw your eyes up. Dollar General testified in his deposition that it merchandises its store and it lays out the store in order to draw the eyes up. All the evidence in the record shows that a five and a half inch pallet on the floor by itself in the middle of an aisle, in and of itself, is a dangerous condition. And that comes from Dollar General's own testimony. That comes from the case law. There are several Fifth Circuit opinions that talk about pallets, which that is what this stack base was. It is essentially a pallet upon which merchandise sits. And it talks about how having a unanchored, small black thing in the middle of an aisle can pose as a tripping hazard. So that in and of itself is a dangerous condition, but we would go beyond that as Dollar General recognizes that the dangerous condition starts when it is below waist high. It's below the eye can see. The cases that are cited by the district court regarding not being able to use the circumstantial and surrounding evidence regarding notice, we're all talking about spills. This is not a spill. This is a gradual condition like in the case that we just cited. I see that my time is winding down. May I briefly conclude? Sure. The court today is in the position of determining whether a company like Dollar General can destroy any evidence that would show dangerous condition, that would show notice, and then, on the other hand, argue that the plaintiff has no evidence to prove their case. We believe that we presented substantial circumstantial evidence that this dangerous condition was created by Dollar General and it remained there for such a significant period of time that they had constructive notice and should have removed it or warned Ms. Orr about it. Thank you. Did you say it was Gustavus? Yes, Your Honor. Okay. Thank you. Thank you, Ms. Gustavus. Thank you, Your Honors. May it please the court. My name is Nicholas Thompson. I represent Dolgen Corp, LLC in this case. I want to clear up some of the factual misstatements that were made during opposing counsel's  First, this allegation that after the drinks were sold down, this stack base was left by itself alone in the middle of the aisle is just absolutely false. This was a row of about 12 of these stack bases. Some of them were bright blue colored. There's a Pepsi version of them. Some of them were black. All of them had drinks stacked on top of them. So, this allegation that this stack base was left out in the aisle by itself and that Ms. Orr somehow came around the corner and tripped on it, just not true. It's false. It's not supported by the record. The video issue that some of Your Honors asked questions about, there is no camera on this aisle that would have captured this incident. There was a video camera at the front door that would have shown people entering and  No camera would have captured this incident. Now, the request from her attorney to preserve video was sent to Dollar General about a month and a half after the incident. It asked to preserve video. It did not ask to preserve these other things that they're complaining about. In response to receiving this letter from the attorney, Dollar General sent a third-party vendor, which is their normal practice, to the store to secure the video footage from that day. The vendor was unable to download or save the video because of technical problems with the store's video system. This is all in the record. The 30B6 rep testified about this. So Dollar General took reasonable steps to preserve and acquire the CCTV video footage. The other two items that they complain about, the written record and the electronic record, were not requested until two-and-a-half-plus years later, after the lawsuit was filed, after we were in discovery, and after the motion to compel had been filed. Now, that all goes to the spoliation issue. I don't think there is a spoliation issue in this case, and I'll tell you why. Opposing counsel just admitted, for one, that there is no evidence that Dollar General intentionally destroyed any of these items. That should end the spoliation question right there. But more importantly, federal law, especially in the Fifth Circuit, is absolutely clear that the district court cannot decide the spoliation question until after the evidence is in at trial. In order for this court to reverse, based on spoliation, you would have to put two carts in front of that horse. You would have to first find that there is some evidence of intentional spoliation, and then you would have to reverse a bunch of case law that says, we can make this decision before trial even begins, before a single shred of evidence is put into trial. And so there's no basis to make a reversal of this case based on spoliation, unless you're willing to overrule a bunch of case law. I'm sorry, are you saying the district court can't on its own say, the court finds that something has been spoliated, and therefore, we're going to have a presumption of that, it could make a presumption of causation, or could, you know, there are many steps of different types of spoliation, things that the district court could do that would affect the trial, so it's not after the trial. Well, the evidence has to be put in at trial on what happened to this evidence. There has to be evidence put in. They could have a hearing, and then it could affect how, therefore, I'm going to have a presumption. The district court could do a presumption, or could do, that would be a not uncommon thing, if the court actually finds there's spoliation, such that the jury couldn't be submitted that question. Well, you know, Your Honor, my understanding is, based on the case law we've cited at the end of our brief, the remedy for spoliation, you're correct, Your Honor, is an instruction to the jury that they need to draw some sort of inference. But you can do that before the trial. In fact, you should do that, so the jury's not hanging out while you're having a big old hearing on that and all these things. It's a court management situation. Well, well. The parties know where they're going to stand when they get to the trial if the evidence is missing. Well, I understand Your Honor's point, Judge, and I'll just refer back to the case that we cited in our brief that said that that's not an appropriate decision to make until trial. If there's case law otherwise to that, I have not been aware of that. On the ledger, does they have a policy that it must be preserved for three years, the daily log or whatever it's called? On the daily planner? Daily planner. Yes, Your Honor. The standard operating procedure did state that it needed to be preserved for three years. Do you have some sort of unpublished case that says if you don't preserve something that you're supposed to preserve that in the normal course that that could create an issue on that? Your Honor, honestly, I'm not aware of that case, and the plaintiff hasn't cited that case. I will say that on the daily planner, though, the evidence was clear that it was not intentionally destroyed to hide evidence or anything, and number two, it would not have shown any probative information. Do your clients actually say or admit in any way in documents or in depositions that this was a dangerous condition? That was a point that was made by your friend on the other side. Yes, Your Honor, and my first point that I was going to get to in the substance of my argument is what is the dangerous condition at issue here? And they have flip-flopped back and forth through the course of the trial court proceedings and up here. There were some cartoon drawings that were shown to my 30B6 rep of a stack base with different levels of drinks on them, and he was shown this cartoon drawing and said, OK, this drawing that shows it up waist-high, is that dangerous? No. This one that's a little bit lower, is that dangerous? No. This one that's a little bit lower about knee-high, is that dangerous? I believe his answer to that question was, well, if you're not watching where you're going, it can be dangerous. Then he was like, well, this one that only has one layer of drinks on it, is that dangerous? Same answer. This one here that has no drinks on it, is that one dangerous? It could be. So our company rep did agree to these drawings of various levels of drinks being on them that they could present a dangerous condition. Now, me personally, and I think the photo of an exemplar row of these stack bases, which is on page 4 of our appellee's brief, and it's our record excerpt number 1, I don't believe any person looking at this row of stack bases could look at that and think it's dangerous. Well, but your personal impression is not the relevant. It's what your client thought. Well, that's true, Your Honor, but the undisputed facts, the facts about the setup of this aisle also demonstrate that it's not dangerous. For example, this row of stack bases is a permanent feature in this store. It's there 52 weeks out of the year. It's been there for at least 15 years. The plaintiff and her mother, who's the one who fell, have been to this store on multiple previous occasions before this incident, were familiar with the store, and knew the row of stack bases was there. The stack base itself is 5 1⁄2 inches tall. It's 30 inches wide. It's 30 inches long, 16 inches wide. It's black. It has a big Coca-Cola logo on it. There's about 8 or 10 or 12 of these lined up in a row. There's at least 36 inches of space on each side of the row of stack bases, so it really kind of creates two separate aisles. The drinks stacked on top of it are different brands, different colors, different sizes, different heights. And so for someone to say that even if it was empty, which there's some dispute about that, even if it was empty, I don't think that it presents a dangerous condition if you're paying attention to where you're going. There's a dispute about that. Can you elaborate?  So there were some allegations in the district court below when our store manager, who was the first person who was deposed, Ms. Vicki Grossman, every question that she was asked was about the empty stack base. Did you know that the stack base was empty? How long was the stack base empty? Empty stack base, empty stack base. So she answered those questions, and based on her answers, the allegation has been that she admitted this thing was 100% completely empty. Well, our assistant manager, Ms. Kitty Hatcher, who responded to the scene immediately after the incident and sat with Ms. Orr while they waited for the ambulance to come, testified that it was only partly empty, meaning there were some stacks of Sprite on it and there were some stacks of Coke on it. Ms. Hatcher testified that all of the Cokes had sold out, but there were still a bunch of Sprites on it, and so only part of it was empty. Now, the issue with partially empty versus fully empty I don't really think makes much of a difference here because as the district court, I believe, correctly held, there is no evidence of Dollar General causing it to be that way or Dollar General knowing it was that way or how long it was that way. Now, the plaintiff's attempt to create this evidence is nothing but speculation. She first argues that, well, it must have taken a long time to sell down because there's 18 drinks stacked on top of it. And she has this theory in her brief that unless there was some sort of sporting event or holiday or something, it's just not possible to sell that many 12-packs. Black Friday, the day before? That's where I'm getting at, Your Honor. This incident occurred at 10.34 a.m. on the Saturday after Black Friday. It was a busy day. So the speculatory assertion that, well, it must have taken a long time for this to sell down, it's defeated by their own hypothetical. This was a holiday shopping weekend. It's possible that 18 different people came in that morning and bought a 12-pack. It's also possible that one person came in and bought 18 12-packs. It's also possible that two people each came in and bought nine. Possibilities do not a case make. Possibilities do not survive summary judgment. Were they on sale? There's no evidence of that one way or the other. I don't recall there being evidence of that in the record. The testimony from the store employees that it was very busy that morning. Their next argument to try to come up with some sort of time period is that, well, the safety check was done at 8 a.m. and the incident occurred at 10.34, so it must have been empty for two and a half hours. Well, the facts defeat that argument and Mississippi law defeats that argument. The Waller v. Dixieland Food Store and the Altman v. Del Shamps case, which we've cited in our brief, stand for the proposition that the time period between the last inspection and the time of the incident do not establish how long the dangerous condition existed. The reason for that is that it's just as likely that the dangerous condition occurred one minute before the incident as it is that it occurred one minute after the last inspection. To put that in terms of this case, it's just as possible that someone bought a bunch of 12-packs 5 or 10 minutes before Ms. Orr fell as it is that someone bought a bunch of 12-packs a few minutes after the 8 a.m. inspection. Without any evidence to show when that occurred, there's no way, there's nothing for a jury to decide on whether or not it was there long enough for Dolgen Corp. to know about it or should have known about it. Now, because they have no evidence on those questions, they have jumped to the spoliation question, and they have said, well, we don't have that evidence because we don't have the video and we don't have these other two items. But again, they've now admitted that there's no evidence that any of that was intentionally spoliated. And in our brief, we've laid out how, even if there was some issue with these three pieces of evidence, none of them would win the day or provide the type of evidence that the plaintiff, Ms. Keister, suggests. As I mentioned, the daily planner doesn't have on there where someone signs off, I did the inspection. And it doesn't have on there where anybody says, well, I was in the back left aisle of the store at so-and-so time doing this, that, or the other. Did Ms. Orr, who I understand has passed in an unrelated manner, did Ms. Orr ever refute her alleged statement that she went to step over the stack base so that she was keenly aware of it, that she may have made to Ms. Hatcher? Well, according to Ms. Keister's deposition, Ms. Keister testified that her mother never told her anything of that nature. But it doesn't say that she didn't see it, or does it? Or does it say she didn't see it? Ms. Keister admitted she doesn't know if Ms. Orr saw it or didn't. She didn't discuss it at all with her? Well, not to that particular apparently. In the deposition, Ms. Keister admitted she doesn't know whether Ms. Orr saw it before she tripped on it or not. Now, what Ms. Orr supposedly told Ms. Keister, you know, could have been the subject of a motion in limine on hearsay had we proceeded that far. But what Ms. Orr told Ms. Hatcher, again, immediately after the incident happened, you know, could go to a proximate cause issue, but Your Honor, to answer your question directly, no, I don't believe that was ever directly refuted. So there's no evidence that Dolgen Corp caused the stack of drinks to get low to whatever point it was when Ms. Orr tripped on it. All the store employees testified they did not know it was sold down to that level before Ms. Orr fell. And the only third available theory that the plaintiff has under Mississippi law is the constructive notice theory, which is that it was sold down low enough for such an amount of time that the store should have known about it. And we've talked about that. There's no evidence of that. They've come up with several speculatory theories. The most recent one, which is brand new in their reply brief, is the Patricola case and the McCarroll v. Dollar General case, citing Patricola in the Woolworth v. Stokes case. And those cases, they have come up with this new theory that, based on those old cases, that the circumstances were such that it made it reasonably probable that this dangerous condition would occur. This argument was not made below. These cases were not cited below. But they do not apply here anyway, and I'll tell you why. The Patricola case and the Stokes v. Woolworth case were about puddles on the floor inside the store. The Woolworth case was about customers bringing in rainwater with them into the lunch counter. The store employees there testified that they knew it was raining hard outside, they knew the customers were tracking in water, they knew puddles were being created in the store, and they had actually set aside a mop to periodically go by and clean up the puddles that the customers were leaving. Well, the plaintiff came in and apparently slipped on a puddle before it could be cleaned up. In the Patricola case, there was an AC vent over the lobby that was dripping. The casino employees testified they knew there was a vent there, they knew condensation developed on the vent, they knew condensation dripped, and they knew that sometimes puddles would form under the vent. The plaintiff came along and slipped in the puddle. In both cases, the defendant's argument was, well, we knew about these things that were happening, but we didn't know about this particular puddle. The court said in those cases, well, you knew that these circumstances were such that this was reasonably probable to develop, that this puddle was probable to develop, and we don't have that here. In order for them to apply the Stokes and the Patricola case to this case, again, which they're trying to do for the first time on appeal, there would have to be some sort of testimony that the store employees knew. They could have deposed a cashier who said, yeah, I remember that morning, and 22 people came through here and bought 12 packs of Coke, or 16 people came back here and came up to me and purchased a bunch of 12 packs of Sprite, or some sort of testimony that the employees knew that the stacks of drinks on this particular stack base were dwindling. And again, there's 8 to 10 of these stack bases. Some of them have Pepsi products on them in bottles. Some of them have other products in 2 liters, and some of them have 12 packs. So there would have to be some evidence to support this new theory, which they don't have. I see my time is running low. I did want to just correct a couple more things before my time ends. Judge Englehart asked the question about the burden for spoliation, and I think Your Honor is correct. There has to be some sort of evidence of intentional spoliation or bad faith destruction of evidence with an intent to deprive the other side of evidence. There is no such evidence in this case. The spoliation issue that they've alleged below and here is really, I think, their last grasp of straws to try to survive summary judgment. They know they don't have any evidence of creation or actual notice or constructive notice, so they're trying to get a second bite at the apple going through the spoliation route. I would suggest to this court that the district court's opinion was clear, concise, and correct in all respects, and we would ask on behalf of Dolgen Corp, LLC, that it be affirmed. Are there any more questions from Your Honors? Thank you. We have your argument. Thank you, Your Honors. On redirect, I just want to address several points made by my opposing counsel. The first overarching theme, using the umbrella from the previous argument, is it's well established that all reasonable inferences should be given to the non-movement, and that inference should be even stronger whereas here the defendant has, whether intentionally, negligently, or otherwise, disposed of evidentiary materials. Here, in the trial court, did the exact opposite. In fact, given the way that the order is structured, it appears that the judge weighed the evidence on their own and made a factual determination that should have been left to the jury. This Dollar General was the only Dollar General in the 22-story district that chose to display that drink or the stack bases in the center of the aisle. We only know that it's the only store in that district because the district court limited our discovery only to that district. For all we know, it could be the only store in the state that does that. Dollar Generals, they just came and posited that there was no evidence that they knew that this was a dangerous condition. Dollar General's store presentation guidelines that are on page 822 of the record state that stack bases are required to be removed when the drinks located on the stack base are below waist level. That's also on the record at page 408 and on page 489. The store presentation guidelines state that drinks must be at least waist high to prevent slip and falls. Their own policies and procedures give evidence that they know that when those drinks hit below that waist-high level that it is a dangerous condition. They talked about our cartoon that is located on page 953 of the record, which we had to use because Dollar General did not take any pictures of the actual scene after Ms. Orr was injured. We talked about Dollar General's 30B6 deponent testified that an empty stack base is a tripping hazard and it is unsafe. There are numerous places in the record where Dollar General itself admits that this was a dangerous condition. Also, we discussed our initial argument because we talked a lot about notice, but our primary argument was that Dollar General created this dangerous condition by displaying the stack bases in the middle of the aisle in the first place. Here, Mississippi law states that when a plaintiff has shown that the circumstances were such to create a reasonable probability that a dangerous condition would occur, he need also not prove actual or constructive notice. The self-service display in and of itself by its very method of operation is designed for customers to come through and to take those drinks. They know that throughout the day, customers will come in, they will remove those drinks, and eventually, if nobody is going back and checking, they will dwindle below waist-high. The easy planner, the document that we had to file a motion to compel for Dollar General to even give us, states, and it's in the record on page... 2014. That might be incorrect. I don't think... I think that's a different thing. But it shows that those recoveries, the checks of the store, are to be conducted hourly. If this had been filled out, if it had been preserved, we would have known when was the last time a customer walked through. He talked about McCarroll v. Dollar General Court, which we cited in our reply brief. In that case, the Southern District of Mississippi, which also cited a Mississippi Supreme Court case, it found that where a store, through its self-service operation or otherwise, creates a condition that could become dangerous to a plaintiff, then that's all you need. You don't have to show actual or constructive notice if the defendant created the condition. So, yes, when they stack the drinks there above waist-high, that in and of itself is not a dangerous condition. We've talked about merchandising, how the stores are designed to draw the eyes up to the merchandise. But when you are placing things in the center of the aisle below waist-high, as Dollar General has admitted, it is a tripping hazard. They were aware of it. The district court failed to acknowledge that they admitted it several times. My time has run out. May I briefly conclude? It is against the fundamental notions of justice that a defendant can say, well, we negligently failed to produce this, we negligently failed to keep this, we're not going to have to resolve this because you didn't specifically ask for it, and then to say, well, the plaintiff does not have enough evidence to prove their case. We believe that circumstantial evidence, common sense, and the evidence in the record support that summary judgment should not have been granted, this issue should have been presented to a jury, and reasonable minds could find that either Dollar General created the dangerous condition or it existed for long enough to constitute constructive notice. We would ask for the lower court's determination to be reversed and remanded or for this court to render and plaintiff's favor. Thank you. Thank you. We have your argument. We appreciate both the arguments, and the case is submitted. The court will stand in recess until tomorrow at 9 a.m. Thank you.